She Enterprises, Inc. *vs.* License Commission
of Worcester.

Worcester.   June 23, 1980. — November 14, 1980.

Present: Greaney, Rose, & Perretta, JJ.

*Public Entertainment.   Practice, Civil,* Appeal, Moot question, Summary judgment, Parties.

An action challenging the constitutionality of a rule of a city's license commission and alleging monetary damages resulting from application of the rule to a licensee was not rendered moot by the commission's revision of the rule following a judgment in the commission's favor.   [703-704]

In an action seeking to compel a city's license commission to render a decision on the plaintiff's 1978 application for a license to conduct nude dancing on its premises and seeking monetary damages for the commission's interference with the plaintiff's constitutional rights, the judge erred in granting the commission's motion for summary judgment on the sole basis that the plaintiff's 1978 entertainment license had expired and it had made no further request for a license to permit nude dancing where the commission's affidavit in support of the motion left open the factual issues concerning its actions in 1978 and where the plaintiff had been informed by a clerk in the commission's office that an application for a license to conduct nude dancing would neither be accepted nor approved.   [704-705]

Where a complaint sought damages against each of the members of a city's license commission and license board individually under 42 U.S.C. § 1983 (1976), but service of process was made pursuant to Mass.R.Civ.P. 4(d)(5), and not 4(d)(1), upon remand of the case the plaintiff was to be granted leave to amend its complaint so as to join and serve process upon any new parties deemed necessary for a final adjudication.   [705]

Civil action commenced in the Superior Court on June 19, 1978.

The case was heard by *Meagher, J.*, on a motion for summary judgment.   *Travers, J.*, ordered entry of judgment.

*Kenneth H. Tatarian* for the plaintiff.

*Timothy W. McGee,* Assistant City Solicitor, for the defendant.

PERRETTA, J.   In June of 1978, the plaintiff brought an action in the Superior Court against the members of the commission, "as they are the duly constituted License Commission" and against the members of the License Board of Worcester, "as they are the duly constituted License Board." By its complaint the plaintiff sought to compel the commission to render a decision on its applications for a license to conduct nude dancing at the Blue Max Casino (Casino), a night club located in Worcester; it also sought to enjoin the board from reducing the seating capacity at the Casino from 200 to 20 patrons. In March of 1979, the plaintiff filed a supplemental complaint in which it repeated and made current its original allegations and in which it sought the assessment of damages against the individual members of the commission and the board for wilful interference with its constitutional rights. 42 U.S.C. § 1983 (1976). See and compare *Rzeznik* v. *Chief of Police of Southampton,* 374 Mass. 475, 484 n.8 (1978), and *Zegouros* v. *City Council of Fitchburg,* 381 Mass. 424, 428-429 (1980). In April of 1979, the commission moved for summary judgment, Mass.R.Civ.P. 56, 365 Mass. 824 (1974), on the sole basis that the controversy had become moot and there was no genuine issue of material fact in dispute. This assertion was based upon the facts that the plaintiff's 1978 entertainment license had expired as matter of law, see G. L. c. 140, § 183A, as appearing in St. 1936, c. 71, § 1. ("Such licenses, unless sooner revoked, shall expire on December thirty-first of each year"), and that the plaintiff had not filed a written application for a 1979 entertainment license to present nude dancing. See *Eve Corp.* v. *License Commn. of Worcester,* 372 Mass. 869 (1977). The motion for summary judgment was allowed. Thereafter, on the commission's motion, another judge, finding no just reason for delay, ordered entry of judgment on fewer than all the

claims.[1]  Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). We reverse the judgment.

1. *Factual Events.*

We recite the facts as they appear in the parties' pleadings, exhibits, and affidavits. At all times here material the plaintiff was licensed, pursuant to G. L. c. 138, to pour alcoholic beverages for sale to the public at the Casino. The plaintiff also held a license for live music and dancing upon the premises for the 1978 calendar year. G. L. c. 140, § 183A. On or about March 3, 1978, the plaintiff decided that it wished to present "contemporary American dancing/or nude dancing" at the Casino as entertainment for its patrons. Although the plaintiff held a 1978 entertainment license and notwithstanding the recent decision of *Commonwealth* v. *Sees,* 374 Mass. 532 (1978),[2] the commission

---

[1] The threshold inquiry is the propriety of the entry of certification of the judgment under rule 54(b), *Allis-Chalmers Corp.* v. *Philadelphia Elec. Co.,* 521 F.2d 360, 363 (3d Cir. 1975). We view the judgment as final and ripe for review. Because the trial judge is the one most likely to be familiar with the case and with whether any justifiable reason exists for delaying the entry of the judgment, *Sears Roebuck & Co.* v. *Mackey,* 351 U.S. 429, 437 (1956), we give substantial deference to his exercise of discretion. *Curtiss-Wright Corp.* v. *General Elec. Co.,* 446 U.S. 1 (1980). Moreover, the parties have proceeded without contesting the finality of the judgment, *Seatrain Shipbuilding* v. *Shell Oil Corp.,* 444 U.S. 572, 583 n.22 (1980), and the record before us supports the conclusion that partial summary judgment was appropriate. Compare *J.B.L. Constr. Co., Inc.* v. *Lincoln Homes,* 9 Mass. App. Ct. 250, 252 (1980).

[2] On March 3, 1978, in *Sees,* 374 Mass. at 537-538, the court struck down an ordinance prohibiting nude dancing on premises for which the corporation held an entertainment license under § 183A and an all alcoholic beverage license under c. 138. The holding was founded upon art. 16 of the Massachusetts Declaration of Rights. "So far as the record before us discloses, the dancer may have been rendering a selection from the 'Ballet Africans' or some other work of unquestionable artistic and socially redeeming significance . . . . [T]he artistic preferences and prurient interests of the vulgar are entitled to no less protection than those of the exquisite and sensitive esthete . . . . The activity here in question was protected expression under art. 16 and the ordinance is therefore invalid as applied . . . . The defendant employed or permitted a female dancer to perform to music on a dance floor for the entertainment of patrons. She did not mingle with other employees or with patrons, and

informed the plaintiff that a "secondary license" was required for the presentation of dancing by paid performers as opposed to patron dancing. At this time entertainment in Worcester liquor establishments was regulated under Rules 21 and 22 of the Rules and Regulations of the License Commission.[3] Despite its doubts that a "secondary license" was necessary or even provided for by statute or local ordinance, the plaintiff, on March 10, 1978, filed applications seeking a license to provide nude dance entertainment at the Casino during 1978. The commission held a hearing on those applications on March 16, 1978, at the conclusion of which it orally informed the plaintiff that it was taking the matter under advisement. Relying both on its firm conviction that there was no such thing as a "secondary license" and on the holdings of *Shuttlesworth* v. *Birmingham*, 394 U.S. 147 (1969), and *Sees*, 374 Mass. 532 (1978), the plaintiff presented nude dance entertainment by paid performers on March 17, 1978. Four days later the plaintiff received written notice from the commission that the police department

---

there is no contention that the performance was obscene . . . . Whatever the artistic merit of her performance, we do not think it could constitutionally be suppressed."

[3] As in effect in March, 1978, those rules provided:

"21. Rules for Artists and Performers: Female Artists or Performers must wear full Bra and Solid Trunks of material other than plastic or of a flesh color. Strip-Tease Exhibition (so-called) are banned. Filthy dialogue, bumps, jerks, shakes (so-called) or any body contact with patrons absolutely forbidden. The licensee is responsible for any disorder, disturbance or illegality of any kind taking place on licensed premises whether present or not. Female Impersonators banned.

"22. No person owning, managing or controlling a cafe, restaurant or other eating or drinking establishment licensed under G. L. Chapter 138, shall offer to view, set up, maintain or carry on a concert, dance, exhibition, cabaret or public show of any description unless and until a license, therefore, has been issued by the licensing authorities as provided by G. L. Chapter 140, Sec. 183A. No person owning, managing or controlling a cafe, restaurant or other eating or drinking establishment licensed under G. L. Chapter 138, shall offer to view, set up, maintain or carry on a concert, dance exhibition, cabaret or show of any description that is obscene or contains obscene matter as defined in G. L. Chapter 272, Sec. 31." But see and compare Revere Rev. Ords. c. 13, art. 3, § 13-26 (1972), as declared invalid in *Sees*, 374 Mass. at 534 n.1.

had complained to it that on March 17, 1978, rule 22 had been violated at the Casino. A hearing was held before the commission on this complaint on March 30, 1978, and the plaintiff's alcoholic beverage license was thereafter suspended for a ten-day period.

Next the plaintiff encountered problems from the license board. The board had previously issued certificates of inspection to the plaintiff authorizing a permissible seating capacity of 200 persons on the first floor of the Casino. On April 18, 1978, the chairman of the board notified the plaintiff in writing that "the maximum occupancy of your premises shall not exceed twenty (20) patrons unless additional parking is provided."

Throughout this period the plaintiff continued to request that the commission render a decision on its March applications for the "secondary license." On June 8, 1978, the commission advised the plaintiff in writing that it was drafting a new set of rules and regulations and that the applications were still under advisement. The new rule concerning licenses for live entertainment was promulgated on August 24, 1978. The new regulation pertaining to live entertainment was found in rule 21 which provided: "The following entertainment may be carried out or presented within the Licensed Premises: LIVE MUSIC, PATRON DANCING, JUKE BOX, TELEVISION, RADIO AND STEREO. Licensee shall make application to the City Clerk's office for such licenses and to be approved by License Commission." Two weeks later the commission gave written notice to the plaintiff that its applications for a "secondary license" had been denied because the proposed activity would not be in accord with rule 21, as revised.

When its 1978 entertainment license automatically expired, the plaintiff applied to the commission for a 1979 license. Although the record contains no exhibits on this point, the commission states in its brief, "That application was granted by the defendants; in its application the plaintiff requested a license for various specific forms of entertainment; the plaintiff did not request a 1979 license to pre-

sent nude and other dance entertainment. The plaintiff never applied to the commission for a license to present nude or other dance entertainment in 1979."

In March of 1979, the plaintiff filed its supplemental complaint reiterating its original allegations and further alleging that it had been denied equal protection of the laws because other establishments in Worcester were presenting live entertainment in the form of "suggestive dancing" without the benefit of a "secondary license," and that at least forty-one establishments in Worcester had fewer parking spaces in proportion to their seating capacities than did the plaintiff. Copies of newspaper advertisements concerning the featured entertainment of other local liquor establishments were attached to the supplemental complaint.[4]

The commission moved for summary judgment and presented an affidavit from its chairman stating that, after the plaintiff's applications for a "secondary license" were denied, the plaintiff made no further written request of the commission for a license to present nude dancing. The plaintiff's president filed an opposing affidavit stating that he did file an application for a 1979 entertainment license and, further, that he "was informed by one of the employees in that office that an application for entertainment other than as defined in Rule 21 would not be accepted or approved." The affidavit also contained factual representations that the commission was prohibiting dance entertainment only in relation to the Casino and that the plaintiff suffers a substantial loss of revenues and profits when such entertainment is not offered to its patrons.

2. *Procedural Events.*

The procedural history of this case is fraught with needless complexities which merit discussion, if only to reach an understanding of what is ultimately at issue. When the

---

[4] As appearing in the record, these advertisements indicated that, notwithstanding the entertainment limitations set out in rule 21, dance exhibitions by performers were being presented in various establishments in the Worcester area.

plaintiff's request for a preliminary injunction was denied, it sought relief before a single justice of this court pursuant to G. L. c. 231, § 118, first par. That request was denied, and the plaintiff appealed. When the summary judgment dismissing the complaint against the commission was entered, the plaintiff filed its notice of appeal, and again requested relief before a single justice of this court pursuant to Mass.R.A.P. 6, as amended, 371 Mass. 914 (1977). This request was denied "without prejudice, for failure to comply with the procedural requirements" of the rule. The plaintiff appealed from that ruling. After the denial of the plaintiff's request in the Superior Court for an injunction pending its appeal from the judgment dismissing its complaint, the plaintiff renewed its motion under Mass.R.A.P. 6. A single justice of this court denied the renewed motion "but without prejudice to further renewal if the License Commission of Worcester takes any action against the plaintiff or its alcoholic beverages pouring license by reason of any supposed violation by the plaintiff of the Commission's present Rule 21."[5] The plaintiff appealed from this order. Pursuant to the plaintiff's requests, these three appeals were consolidated with its appeal from the judgment.

After the plaintiff filed its consolidated brief and appendix, the commission moved to dismiss the plaintiff's appeal from the judgment on the basis that the rule in dispute had been extensively revised on August 23, 1979, curing any alleged constitutional infirmities, and the matter was thus moot. A single justice of this court then allowed the commission to brief the mootness issue only, with the condition that should a panel of this court determine that the matter was still in dispute, the commission could file a brief on the substantive issues.[6]

---

[5] This order was entered on July 25, 1979, and by its very terms addressed potential action by the commission under rule 21, as revised on August 24, 1978.

[6] The plaintiff's failure to argue in its brief that the appeal was not moot because revision of the rule did not touch the damage claim does not constitute a waiver of the argument, as the commission did not raise the issue of mootness until after the plaintiff had filed its brief.

At this juncture of the proceedings and after oral argument on the summary disposition list, see Rule 1:28 of the Appeals Court Rules, as amended, 6 Mass. App. Ct. 982, effective March 2, 1978, the plaintiff's three appeals from the orders of the single justice were dismissed, and the summary judgment dismissing the complaint was affirmed.[7]   Thereafter the parties filed requests for rehearing.  Without acting on those requests we vacated our order affirming the judgment of the Superior Court on our own motion.  *She Enterprises, Inc.* v. *License Commn. of Worcester,* 9 Mass. App. Ct. 937 (1980).  We ordered the parties to present full and complete argument on that appeal alone; we left undisturbed our order dismissing the remaining appeals.

3. *Mootness of the Appeal.*

We reject at the outset the commission's reliance on the August 23, 1979, revision of rule 21 to moot this controversy.  In addition to those facts recited in part 1 of this opinion, the plaintiff alleged:  that the commission's insistence upon the need for a "secondary license" was a sham and a ploy to deprive the plaintiff of its constitutional rights; that a "secondary license" was not required by statute or by any written rule or regulation of the commission;[8] that the commission has kept the plaintiff in a state of uncertainty concerning its exercise of its right of freedom of expression, and that the commission has done so under the guise and threat of loss of the plaintiff's alcoholic beverage license; that, as a result of these deliberate and wilful actions by the commission, the plaintiff has suffered substantial monetary losses.

---

[7] The denial of the plaintiff's first motion under Mass.R.A.P. 6 was without prejudice.  When it was subsequently renewed, the order entered thereon concerned the commission's rule 21, as revised in August of 1978.  The August, 1979, revision of rule 21 did render these appeals moot.  The plaintiff had no right of appeal from the denial of its request for relief under G. L. c. 231, § 118, first par.  *Cappadona* v. *Riverside 400 Function Room, Inc.,* 372 Mass. 167, 169 (1977), and cases cited.  Hence, these three appeals were dismissed.

[8] The commission has cited no statutory or regulatory authority under which it demanded that the plaintiff obtain a "secondary license."  Our research uncovered none.

It is difficult to perceive how a postjudgment revision of a rule of dubious constitutionality as to its terms and application, all to the monetary damage of the plaintiff, can render these factual allegations moot, and we hold that it does not. Moreover, the commission has never alleged that the plaintiff has failed to state a claim upon which relief could be granted under 42 U.S.C. § 1983 (1976), see e.g. Mass.R. Civ.P. 12(b)(6), 365 Mass. 755 (1974). See *Rzeznik*, 374 Mass. at 484-486; *Maine* v. *Thiboutot*, 448 U.S. 1 (1980). The postjudgment revision of rule 21 is immaterial to the plaintiff's claims, and the wrongdoing alleged in the complaint and supplemental complaint has not been rectified by the August, 1979, revision of rule 21.

4. *Summary Judgment.*

We examine the pleadings, affidavits and exhibits to determine whether a genuine issue as to any material fact existed at the time of the entry of the judgment. *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 554 (1976).

Notwithstanding the plaintiff's numerous allegations of wrongdoing and damage, the commission moved for summary judgment on the sole basis that the plaintiff's 1978 entertainment license had expired and that thereafter the plaintiff made no further written request for a license to present contemporary dance entertainment or to present performers "to dance in the nude." The commission relies upon *Eve Corp.* v. *License Commn. of Worcester*, 372 Mass. at 869, where the plaintiff was denied relief because it had made only informal inquiries concerning its securing of a § 183A license rather than filing a formal application. The commission's argument fails on two scores. First, the chairman's affidavit leaves open the factual issues concerning the commission's actions in 1978. Secondly, unlike in *Eve*, the plaintiff requested and obtained a 1979 entertainment license, and was informed by a clerk in the commission's office that an application for entertainment other than that described in rule 21 would neither be accepted nor approved. The pleadings, affidavits, and exhibits convince us that at a minimum there is a factual controversy about

what occurred in 1978 and 1979, when the plaintiff attempted to comply with the commission's demands. Therefore defendant's motion was not properly susceptible to summary judgment.

5. *Service of Process.*

Because we wish to expedite what has become a protracted matter, we take up one additional problem festering on the record. The plaintiff has requested that damages be assessed against each of the members of the commission and the board individually under 42 U.S.C. § 1983 (1976). However, all parties have appeared to proceed as if the commission and the board are the defendants. The city of Worcester is not a named defendant. The defendants are represented by the same counsel, the city solicitor.[9] The docket entries before us indicate that service of process on the plaintiff's complaint and supplemental complaint was made pursuant to Mass.R. Civ.P. 4(d)(5), and not 4(d)(1), 365 Mass. 734-735 (1974). Even were we to deem the complaint and supplemental complaint as alleging a cause of action against the members of the commission and the board in their individual capacities, and there is strong basis for our doing so in view of the recited allegations therein contained,[10] this would not resolve the problem of service of process nor safeguard the concomitant due process rights of all parties. Accordingly, upon remand of this case to the Superior Court, the plaintiff, upon request, is to be granted leave to amend its complaint and supplemental complaint so as to join and serve process upon any new parties it deems necessary to a just and final adjudication of this controversy. See Mass.R.Civ.P. 17(a) and 19(a), 365 Mass. 763-764, 765 (1974).

6. *Conclusion.*

The judgment of the Superior Court is reversed, the order allowing the commission's motion for summary judgment is

---

[9] See and compare *Zegouros* v. *City Council of Fitchburg*, 381 Mass. 424, 429-430 (1980).

[10] See *Geraghty* v. *Mott's Shop-Rite of Holyoke, Inc.*, 377 Mass. 911 (1979); compare *Zegouros*, 381 Mass. at 429-430.

reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*