**Tony B. GASKINS, Petitioner,**

v.

**Ronald T. DUVAL, Respondent.**

**No. CIV.A.97–11540–WGY.**

United States District Court,
D. Massachusetts.

Sept. 20, 2004.

Cathryn A. Neaves, Attorney General's Office, Boston, MA, for Ronald Duval, Respondent.

### MEMORANDUM

YOUNG, Chief Judge

The Petitioner, Tony B. Gaskins ("Gaskins"), brought this habeas corpus petition (the "Petition") under 28 U.S.C. § 2254 to attack collaterally his conviction of first-degree murder in the Massachusetts Superior Court sitting in and for the County of Essex. This Court dismissed the Petition for failure to exhaust state remedies, and subsequently denied Gaskins's Motion To Vacate the Dismissal Order [Doc. No. 42]. Gaskins then moved this Court to reconsider its order denying that motion. The Court denied this motion on July 27, 2004. This memorandum explains why.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of Gaskins's state criminal case are recounted in *Commonwealth v. Gaskins*, 419 Mass. 809, 647 N.E.2d 429 (1995). The relevant factual and procedural history up to and including this Court's March 28, 2000 dismissal of Gaskins's Petition is recounted in *Gaskins v. Duval*, 89 F.Supp.2d 139 (D.Mass.2000).

On December 3, 2003, Gaskins moved this Court to vacate its dismissal order, to restore the Petition to the docket, and to stay the Petition until he finished exhausting his state remedies. Mot. To Vacate [Doc. No. 42]. The Court denied this motion on December 5, 2003. On December 18, 2003, Gaskins filed the present motion for the Court to reconsider its order of December 5, 2003. Mot. To Reconsider [Doc. No. 43]. The Respondent, Ronald T. Duval, did not oppose the motion.

### II. DISCUSSION

#### A. Vacating the Dismissal Order

Under 28 U.S.C. § 2244(d), which codifies certain changes to the law embodied in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, a one year statute of limitations applies to federal habeas challenges to state court convictions. That period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The Supreme Court has held that "other collateral review" refers only to state proceedings, and thus that the limitation period is not tolled during federal habeas proceedings. *Duncan v. Walker*, 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

Under 28 U.S.C. § 2254(b)(1)(A), a state prisoner must exhaust all available state remedies before pursuing habeas relief in federal courts. Prior to AEDPA's passage, when a district court encountered a "mixed petition," that is, a petition containing both exhausted and unexhausted claims, it would typically offer the petitioner two options: amend the petition to delete any unexhausted claims, or return to state court to present the unexhausted claims there. *See Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Under AEDPA, however, state prisoners with mixed petitions face an increased danger of forfeiting their claims. If a prisoner deletes unexhausted claims from her petition, she may well be barred from bringing those claims at a later date, because of AEDPA's limitation on second or

successive petitions. Under 22 U.S.C. § 2244(b), state prisoners may only bring such petitions in limited circumstances, subject to strict procedural requirements. On the other hand, if the prisoner agrees to dismissal of her Petition so she can exhaust her remaining claims, she runs the risk of running afoul of the one year limitation period. As this Court has discussed elsewhere, federal courts typically take a long time to resolve habeas petitions, even those that are dismissed for failure to exhaust, and it is quite common for resolution to take over a year. *Kane v. Winn,* 319 F.Supp.2d 162, 216–17 nn. 86–87 (D.Mass.2004). Because the pendency of a federal habeas petition does not toll the one year limitation period, dismissal of a mixed petition more than a year after the filing of the petition would almost always foreclose future federal review of the claims raised therein, at least in cases where equitable tolling was not available.

The courts of appeals, including the First Circuit, have approved a "stay and abeyance" procedure to protect habeas petitioners from falling into this trap. *E.g., Neverson v. Farquharson,* 366 F.3d 32, 42–43 (1st Cir.2004). Rather than dismissing a mixed petition, a district court may stay proceedings while the petitioner returns to state court to resolve his unexhausted claims. *Id.* at 42. The First Circuit in particular has strongly recommended this practice, particularly where dismissal might result in prejudice, and has recommended that courts explain to *pro se* petitioners the procedural options available to them and the legal consequences thereof. *Id.* at 42–43; *Delaney v. Matesanz,* 264 F.3d 7, 14 n. 5 (1st Cir. 2001). Justices Stevens, Souter, Ginsburg, and Breyer have all endorsed the stay and abeyance procedure, *see Duncan,* 533 U.S. at 183, 121 S.Ct. 2120 (Stevens, J., concurring, joined by Souter, J.); *id.* at 192, 121 S.Ct. 2120 (Breyer, J., dissenting, joined by Ginsburg, J.), and Justice O'Connor has noted the practice's widespread acceptance in a manner that suggests she approves of it, or at least does not consider it to be beyond the power of the district courts, *see Pliler v. Ford,* — U.S. —, —, 124 S.Ct. 2441, 2448, 159 L.Ed.2d 338 (2004) (O'Connor, J., concurring). The other four justices have not addressed the practice's propriety. *See Pliler,* — U.S. at —, 124 S.Ct. at 2446 (plurality opinion).

■ Although the stay and abeyance procedure is widely accepted and encouraged, district courts are not **required** to inform *pro se* petitioners of its availability, or to explain other procedural options, although it may be that petitioners who are affirmatively misled by a district judge are entitled to relief. *Id.* at 2445–46. It is unclear what effect *Pliler* has on the line of cases holding that the stay and abeyance procedure "is *required* when dismissal could jeopardize the petitioner's ability to obtain federal review." *Nowaczyk v. Warden,* 299 F.3d 69, 79 (1st Cir.2002) (collecting cases that have held as much).

This Court now uses the stay and abeyance procedure regularly, but it did not use the procedure at the time it dismissed Gaskins's petition. Equitable tolling is sometimes available in cases where a court failed to use the procedure, and it is possible that, were Gaskins to refile the Petition at the conclusion of his state proceedings, it would be appropriate to toll equitably the period when the Petition was before this Court. *See Neverson,* 366 F.3d at 43–44 (providing guidelines for determining the appropriateness of equitable tolling). Gaskins does mention the possibility of equitable tolling, but what he is really seeking is something quite different.

■ Gaskins's Motion To Vacate is, first and foremost, an attempt to place his Petition in the posture it would have occupied had the Court followed the stay and abeyance procedure on March 28, 2000, instead

of dismissing the Petition. Strictly speaking, it is a motion for relief from a final order under Federal Rule of Civil Procedure 60(b).[1] Under Rule 60(b):

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

■ According to the First Circuit:

> Relief under Rule 60(b) is "extraordinary in nature" and is therefore "granted sparingly." To succeed on a Rule 60(b) motion, the movant must show that (1) the motion is timely, (2) exceptional circumstances justify granting extraordinary relief, and (3) vacating the judgment will not cause unfair prejudice to the opposing party. In addition, the movant must show that granting the motion will not be an "empty exercise" by demonstrating that the underlying claim for relief is likely to succeed on the merits.

*Caisse v. DuBois*, 346 F.3d 213, 215 (1st Cir.2003) (citations omitted). District courts have broad discretion in resolving Rule 60(b) motions. *Id.* at 215–16 (citing *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir.2002)).

The first question is whether Gaskins filed his original Motion To Vacate "within a reasonable time." The "reasonable time" requirement comes directly out of the language of Rule 60(b), which also specifies a limitation period of one year for motions based on mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or misrepresentation. Rule 60(b)(1)-(3). Rule 60(b) motions filed within less than one year can still sometimes run afoul of the "reasonable time" requirement, whether or not they fall within Rule 60(b)(1)-(3), depending on the circumstances. *Cotto v. United States*, 993 F.2d 274, 280 (1st Cir.1993). For Rule 60 motions that fall outside those provisions, periods of more than one year may also sometimes be reasonable. *Id.*

Gaskins's case almost certainly fails under "excusable neglect," given that he could have discovered the legal predicate for his motion at the time of the dismissal order, or at least at the time that *Duncan v. Walker* was decided. Even if he could not have been expected to seek vacation of the dismissal order until the opinions in *Duncan v. Walker* were issued, that decision came down on June 18, 2001, almost two and a half years before Gaskins filed his original Rule 60(b) motion. Under the one year limitation period that applies to excusable neglect cases, Gaskins's original Rule 60(b) motion was untimely.

■ Even if Gaskins tried to fit his motion under the "any other reason" prong, it would be untimely under the "reasonable time" standard. The legal predicate for the motion existed for at least the nearly two and a half years between the *Duncan* decision and Gaskins's filing of the Motion To Vacate. Although courts must make allowances for *pro se* litigants, and particu-

---

1. This is a true Rule 60(b) motion and does not raise any of the problems associated with second or successive habeas petitions disguised as Rule 60(b) motions. *See Rodwell v. Pepe*, 324 F.3d 66, 67 (1st Cir.2003).

larly for prisoners, it is still a litigant's responsibility to seek desired relief in a timely manner.

Because Gaskins's original motion was untimely, the Court need not address the interesting questions raised by the "exceptional circumstances" and "unfair prejudice" inquiries. It remains for another day to decide, for example, whether Rule 60(b) relief would ever be appropriate as a substitute for equitable tolling, in a case where the latter was not available.

## B. Filing a New Habeas Case (or Recharacterizing the Motion to Vacate)

Gaskins has one final option. He could file a new habeas petition, with a request that the Court apply the stay and abeyance procedure. Procedurally, a new habeas petition would stop the AEDPA limitations clock on the date of filing, and all the time since AEDPA's effective date that Gaskins has been challenging his convictions in the courts of the Commonwealth would be excluded. If Gaskins were to finish exhausting his claims in the state courts, without obtaining relief, this Court would presumably then have to determine whether Gaskins is eligible for equitable tolling of the period during which his original Petition was pending in the federal courts. If equitable tolling were not available, then Gaskins's federal habeas claims would be time-barred.

. Since the date of his original conviction, Gaskins has promptly pursued his remedies, and has never in any way abused the writ of habeas corpus. He has proposed that, should the Court allow his Motion To Reconsider, he will provide the Court with regular updates on his state proceedings, and will promptly pursue his federal claims, should the state courts deny him relief. He has consistently acted in good faith, and there can be little doubt that the equities favor him.

Given that the Court ideally should have applied the stay and abeyance procedure in 2000, that Gaskins has consistently acted in good faith, and that his liberty is at stake, the Court would be entirely willing to permit Gaskins to file a renewed habeas petition, which the Court would then immediately stay and hold in abeyance until Gaskins finishes exhausting his administrative remedies. With matters in their present posture, however, this Court cannot render an advisory opinion concerning equitable tolling, and it is inappropriate for the Court to recharacterize Gaskins's Motion To Vacate in this manner without his permission, however. *See Castro v. United States,* 540 U.S. 375, 124 S.Ct. 786, 789, 157 L.Ed.2d 778 (2003). Therefore, the Court denied Gaskins's Motion To Reconsider in its entirety, leaving his case closed. Should Gaskins wish to file a new habeas petition and to request that the Court stay proceedings until he has finished exhausting state remedies, he may do so.

Moreover, Gaskins may also file a motion asking the Court to reconsider its order dismissing his December 3, 2003 Motion To Vacate, and to treat that Motion To Vacate as a newly filed habeas petition. Gaskins would still have to pay a new habeas petition filing fee, and the Court would also request that he file a new habeas petition in addition to the motion to reconsider. Should the Court grant the motion to reconsider, the effect would be to toll the AEDPA limitations period as of December 3, 2003 (the date Gaskins filed his Motion To Vacate), rather than as of the date when he files his new petition. The difference may be an academic one, of course, if Gaskins files a new habeas petition before he is through exhausting state remedies, because the time between December 3, 2003, and the date of filing the new habeas petition would be excluded anyway.

## III. CONCLUSION

For the reasons detailed above, Gaskins's Motion To Reconsider, [Docket No. 43] was DENIED.